IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EVERETTE O. BAKER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   CAUSE NO. 02-CV-115-WDS |
| | ) |
| UNITED STATES OF AMERICA, | )   (Criminal No. 97-30079-WDS) |
| | ) |
| Respondent. | ) |

**MEMORANDUM & ORDER**

**STIEHL, District Judge:**

This matter is before the Court on defendant's habeas petition and for determination of whether the ruling in *United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002) should apply to the petitioner's convictions for money laundering.

Petitioner was tried by jury and convicted of several counts of money laundering, engaging in monetary transactions exceeding $10,000 in criminally derived property and one count of criminal forfeiture. Specifically, in Counts 1-10, petitioner was convicted of laundering Travel Act funds in violation of 18 U.S.C. § 1956(a)(1), which consisted of transfers of funds from one Magna Bank account to another. In Counts 11-15, petitioner was convicted of money laundering Travel Act funds in violation of §1956(a)(1), which consisted of check payments to other businesses. In Counts 16-20, petitioner was convicted of engaging in monetary transactions exceeding $10,000 in criminally derived property. He was also convicted in Count 21 of conspiracy to commit money laundering from 1990-1997, and in Count 22 of engaging in a monetary transaction in criminally derived property when he withdrew $20,000 to post bond for Byran Parker. Petitioner agreed to have the Court determine the forfeiture count, Count 23, see *United States v. Baker*, 82 F. Supp.2d 936, 944 (S.D. Ill. 1999). Petitioner was sentenced to a term of imprisonment of 180 months, 3 years of supervised release, a $1,200 special assessment,

and the Court ordered forfeiture in the amount of $4,407,592.

### A. Petitioner's Habeas Actions

Petitioner, who is proceeding pro se, filed his initial motion claiming six grounds of relief. The Court dismissed those claims which were precluded by the ruling of the Seventh Circuit on direct appeal,[1] leaving his claims of ineffective assistance of counsel on appeal (Claim 3); ineffective assistance of trial counsel for failing to prepare petitioner to testify which resulted in his not testifying (Claim 5); and ineffective assistance of counsel at trial due to counsel's inability to concentrate on the proceedings (Claim 6). The government filed its response (Doc. 8). Petitioner then sought to amend his petition to raise three grounds challenging his money laundering convictions based on the Seventh Circuit ruling in *United States v. Scialabba*, 282 F.3d 475 (7th Cir. 2002). The Court at first denied him leave to file these claims (See. Doc. 22), but then undertook *sua sponte* review and directed the parties to file briefs as to the retroactivity of *Scialabba*. (Doc. 41). Those briefs have been filed and petitioner has, with leave of Court, filed a second amended habeas petition seeking to apply the holding of *Scialabba* to his convictions under 18 U.S.C. §§ 1956(h) and 1957.

#### 1. Retroactivity of *Scialabba*

The first issue which the Court must address is whether the holding in *Scialabba* is applicable to the habeas petitions. As this Court previously stated (Doc. 22), if *Scialabba* is a procedural rule, then the provisions of *Teague v. Lane*, 489 U.S. 288 (1989) would act to bar the petitioner's claim. If, however, the holding in *Scialabba* is substantive, then *Teague* would not act as a bar to a habeas action. *Muth v. Frank*, 412 F.3d 808. 816-17 (7th Cir. 2005). The

---

[1] Those claims were: claim 1, constructive amendment of the indictment; claim 2, ineffective assistance of counsel in failing to object to the burden of proof; and claim 4, valuation of forfeited property.

Seventh Circuit noted in *Muth* that there are "two 'exceptions' to [the *Teague*] doctrine of non-retroactivity: 1) the rule 'places a class of private conduct beyond the power of the State to proscribe,' [489 U.S. ] at 311, or; 2) the rule is a 'watershed rule' that implicates the fundamental fairness and accuracy of the criminal proceeding." 412 F.3d at 816 (citations omitted).  The *Muth* court stated "[i]f it would be unconstitutional to punish a person for an act that cannot be subject to criminal penalties it is no less unconstitutional to keep a person in prison for committing the same act." *Id.* at 817 (citation omitted).

The government urges this Court to find that *Scialabba* was both wrongfully decided and is factually distinguishable from this case, asserting that no other circuit has held that money laundering must be based on net rather than gross proceeds, and on the basis that *Scialabba* involved money laundering of gambling proceeds whereas Baker's case involved money laundering of Travel Act proceeds under 18 U.S.C. § 1952.

The Court is persuaded that *Scialabba* establishes a substantive, rather than a procedural ruling.  Under *Scialabba,* a financial transaction involving the "proceeds" of a crime for purposes of § 1956(a)(1), when the "crime entails voluntary, business-like operations, . . . must be net income." 282 F.3d at 475.  Therefore, as a substantive ruling, petitioner's claims are not necessarily barred under *Teague.*

The Court notes that the Seventh Circuit re-visited the issues determined in *Scialabba* in its recent ruling in *Santos v. United States*, 2006 WL 2456817 (7th Cir. August 25, 2006), where it re-affirmed the application of *Scialabba, Id.* at * 7.   In *Santos,* the Seventh Circuit stated that *"Scialabba* . . . ruled that such transactions, which constituted the payments of the enterprise's operating expenses out of its gross income, could not support the defendants' money laundering convictions." *Id*. at * 4.    This makes it clear that for money laundering claims brought under

§1956(a)(1), the government must prove that the defendant's activities involved net, not gross proceeds.

*Scialabba* involved the provisions of §1956(a)(1), the key language of which is "Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such financial transaction which in fact involves the proceeds of specified unlawful activity . . . ." The government asserts that because the transactions charged as substantive money laundering counts arose from illegal proceeds, there is no *Scialabba* issue in this case. The government further claims that under the Seventh Circuit's ruling in *Baker* the Travel Act aspect of the money laundering charge differentiates this conviction from that in *Scialabba*.  In *Baker,* the Seventh Circuit held:

> To establish a Travel Act violation, it is not necessary for the government to prove that an act of prostitution under Illinois law followed each credit card transaction. *See United States v. Campione*, 942 F.2d 429, 434 (7th Cir. 1991).  Section "1952 refers to state law only to identify the defendant's unlawful activity [;] the federal crime to be proved in § 1952 is the use of interstate facilities in furtherance of the unlawful activity, not the violation of the law; therefore, § 1952 does not incorporate state law as part of the federal offense, violation of the Act does not require proof of a violation of state law.

227 F.3d at 961. The government's position is that the evidence established that in this case the funds involved in the money laundering became illegal proceeds upon deposit and that each charged transaction was a transaction in illegal funds; that petitioner used separate accounts for his other businesses; and the government presented evidence of the net criminal activity (the 4.4 Million compared to the 9 Million in gross proceeds of illegal and legal activities); and that the prostitution proceeds were separately banked and the substantive counts involved only funds from those accounts.

This Court is not persuaded by the government's position that *Scialabba* and *Santos* are

4

limited to gambling enterprises only. Like gambling, prostitution is an unlawful business in Illinois. *See, Scialabba* 282 F.2d at 475; *Baker,* 227 F.3d at 961. The *Scialabba* court found that "the word 'proceeds' in § 1956 denotes net rather than gross income of an unlawful venture." 282 F.3d at 478. This language is quite plain. For purposes of the offense of money laundering under §1956(a)(1), the *Scialabba* opinion did not specifically limit its holding to gambling offenses under that statute – and this Court is persuaded that it must apply the term "proceeds" in the same manner to the convictions here, i.e. that the proceeds involved in the money laundering counts under § 956(a)(1) must have been "net" not "gross" proceeds.

Anticipating that concern, the government notes that in sentencing the petitioner, and in calculating forfeiture amounts, this Court assessed only massage parlor proceeds for the period of January 1990, through November 1997. *Baker*, 82 F. Supp 2d at 943. That is not, however, the way that the money laundering counts were charged or presented for the jury's determination on the money laundering counts. Moreover, as this Court noted in its order on the forfeiture count, the evidence at trial was that defendant's related businesses were all combined for financial purposes. The Court stated: "Although advised by his accountant to separate his businesses in order to partition the 'legitimate' parts of the real estate, e.g. the topless nightclubs, the adult bookstore and the adult video store, from the massage parlor, the defendant did not do so. Moreover, he routinely commingled the profits from the nightclub and the video and book stores with the massage parlor profits." 82 F. Supp. 2d at 939 (emphasis added). Further, the Court found that the "businesses owned by the defendant were essentially operated as one intertwined enterprise where the defendant commingled the proceeds from all three portions of the business into the same Magna Bank accounts . . . ." *Id.* Given these specific prior findings of the commingling of legitimate and non-legitimate income into the accounts, the Court is

persuaded that the concerns of *Scialabba* are, indeed, raised in this case with respect to net and gross proceeds for the charges in Counts 1-10 and 11-15, the money laundering counts.

The Court notes that in *Santos,* the Seventh Circuit specifically rejected the government's argument that other circuits have rejected the gross versus net approach to "proceeds" in § 1956(a)(1), *id.* at *5, and also rejected the government's contention that *Scialabba* "incorrectly limited the crime of money laundering to situations in which criminals conceal their proceeds, thereby eviscerating § 1956(a)(1)'s promotional subsection." *Id.* at *6. The Seventh Circuit noted that the government had misread *Scialabba*, and that the "statute criminalizes the concealment of proceeds and also prohibits the use of proceeds to promote the illicit activity." *Id.* Holding: "There is distinct difference between paying expenses and reinvesting net income." *Id.*

Therefore, the Court **FINDS** that the defendant's convictions on Counts 1-10 and 11-15 under § 1956(a)(1) must be **VACATED** and **SET ASIDE** under the holding of *Scialabba* and *Santos*.

### 2. Convictions under 18 U.S.C. §1957 and §1956(h)

The petitioner has amended his habeas petition to also raise *Scialabba* challenges to his convictions for engaging in monetary transactions, Counts 16-20 and 22 and for conspiracy to commit money laundering, Count 21. Although the Court has held that *Scialabba* applies to the petitioner's substantive convictions under §1956(a)(1), it is not persuaded that the holding of *Scialabba* would apply to either § 1957 or § 1956(h) charges. There is nothing in *Scialabba* that would extend the court's holding to conspiracy cases. The concern of a conspiracy is the agreement to engage in a prohibited transaction, and the concerns over gross and net income are not present. Similarly, the provisions of § 1957 specifically define "criminally derived prop-

erty" as "any property constituting, or derived from, proceeds obtained from a criminal offense." 18 U.S.C. § 1957(b)(2). Therefore, the Court **REJECTS** petitioner's claims raised in his second amended habeas petition that *Scialabba* applies to the convictions in Counts 16-22.

### B. Remaining Habeas Claims

The remaining habeas claims are that petitioner was denied ineffective assistance of counsel in that on appeal appellate counsel conceded the issue of sufficiency of the evidence on the money laundering counts (Claim 3); that petitioner received ineffective assistance of counsel at trial because trial counsel failed to prepare the petitioner to testify which resulted in his not testifying (Claim 5); and that there was ineffective assistance of counsel at trial due to counsel's inability to concentrate on the proceedings (Claim 6).

With respect to his first contention, the Court **FINDS** that based on its ruling on the money laundering counts, this claim is now **MOOT** and it is **DENIED**.

With respect to his claims of ineffective assistance of trial counsel, the Court **FINDS** that these claims are without merit.[2] A claim of ineffective assistance of counsel requires proof not only that the lawyer's handling of the defense failed to come up to minimum professional standards, but also that his failure "prejudiced" the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Initially, the Court notes that the Court directly questioned the petitioner at trial on his decision not to testify (See Trial Transcript, Vol. XVIII, pp. 2-3). Petitioner did not at trial, and to this Court, assert any of the claims he now raises with respect to trial counsel and he has waived this claim. *United States v. Olano,* 507 U.S. 725, 733-34 (1993). Moreover, he has failed to show how this amounted to ineffective assistance, and how it prejudiced his case.

---

[2]The Court notes that trial counsel, Charles Shaw, is now deceased and, therefore, cannot respond to petitioner's claims.

The defendant's contention that he did not engage in prostitution business and had taken measures to insure that prostitution did not take place simply is belied by the overwhelming evidence adduced at trial. Without revisiting the extensive evidence at trial, it is fair to say that the petitioner has not established that trial counsel's decision not to put the petitioner on the stand was anything other than a wise trial tactic. Baker simply has not established that trial counsel's representation "fell below an objective standard of reasonableness" in this respect and with this decision. *Id.* at 688. On that basis, the Court, therefore, **DENIES** petitioner's claim in ground 5 that he received ineffective assistance of trial counsel with the decision not to have the petitioner testify or to adequately prepare him to testify. Clearly the decision not to testify was the petitioner's and was made after being fully advised by the Court of his right to testify.

The final ground raised in the original habeas action is petitioner's claim that he received ineffective assistance of trial counsel because attorney Shaw dozed or slept during the trial, had difficulty in concentrating on the trial proceedings, and engaged in bizarre tactics likely to bias the jury. The government, in its response, has provided the affidavits of Michael Quinley, Assistant United States Attorney, who was one of the prosecutors in this case, along with that of John Moore, Charles Shaw's assistant in the case. These affidavits provide that Shaw conducted a vigorous defense of this case, aggressively cross-examining witnesses and arguing in defense of his client. Moreover, they both state that at no time was Mr. Shaw observed sleeping or dozing during the trial.

The Court has, of course, its own recollection of Mr. Shaw's performance and efforts in this trial. The Court is well satisfied that Mr. Shaw vigorously and carefully defended this case. At no time during the trial was he ever observed by the Court to be sleeping, or even distracted or not focused on the proceedings. Moreover, there were no trial tactics that were, in any way,

hostile to the jury nor, in the Court's view, in any manner likely to create bias against the defendant. In fact, the demeanor which Mr. Shaw demonstrated during the trial was professional, and did not, in any manner, harm the defendant's case.

Petitioner has failed to establish that he received ineffective assistance of counsel due to inattention, sleeping or improper trial tactics. There simply is no merit to petitioner's claim, and it is, accordingly, **DENIED**.

## CONCLUSION

Therefore, the Court **GRANTS** in part, and **DENIES**, in part petitioner's application for habeas review. The Court **GRANTS** petitioner's motion as it is directed to his convictions for money laundering, Counts 1-10 and 11-15, and the convictions and sentence on those counts are **VACATED** and **SET ASIDE**. The Court **DENIES** petitioner's motion directed to his convictions and sentence on Counts 16-20, Count 21, Count 22, and the forfeiture in Count 23. The Court's sentence on these counts remains unaffected by this ruling. Therefore, the petitioner's sentence of 180 months consisting of a term of 180 months on Count 21, Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(a)(a)(A)(i) and (h), and a term of 120 months on each of Counts 16-20 and 22, Monetary Transactions in criminally-derived property, in violation of 18 U.S.C. § 1957, all such terms to run concurrently, and a term of 3 years of supervised release on each of Counts 16-22, with the conditions to remain in full force and effect as originally imposed, and forfeiture in Count 23, 18 U.S.C. § 982, in the amount of $4,407,592, as set forth in the Court's Order of October 21, 1999 (*see United States v. Baker*, 82 F. Supp. 2d 936 (S.D. Ill. 1999)), shall remain in full force and effect.

The Court ordered a special assessment in the amount of $1, 200, which included an assessment of $50.00 on each of Counts 1-15, which have now been vacated. The record before

the Court reveals that to date the petitioner has paid a total of $950.00, leaving a balance of $250.00.  The petitioner would be entitled to a credit for the special assessment amounts paid on Counts 1-15, of $750.00, less the amount of the balance due of $250.00, for a total credit of $500.00, and the Court **ORDERS** that this $500.00 shall be applied to the forfeiture judgment in Count 23.

    **IT IS SO ORDERED.**

    **DATED:   September 29, 2006.**

    **s/ WILLIAM D. STIEHL**
    **DISTRICT JUDGE**